N.Y.S.D. Case # 12-cv-7307(AJN)

**MANDATE**

13-3832-cv
*Continental Indus. Grp., Inc. v. Equate Petrochemical Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of October, two thousand and fourteen.

PRESENT:
      BARRINGTON D. PARKER,
      DEBRA ANN LIVINGSTON,
                  *Circuit Judges*,

      MICHAEL P. SHEA,[*]
                  *District Judge*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 14, 2014

_____

CONTINENTAL INDUSTRIES GROUP, INC.,

           *Plaintiff-Appellant*,

- v. -                            No. 13-3832-cv

EQUATE PETROCHEMICAL COMPANY,

           *Defendant-Appellee*.

_____

                        MICHAEL T. CONWAY, LeClairRyan, New York, NY, *for Plaintiff-Appellant*.

_____

    [*]Judge Michael P. Shea, of the United States District Court for the District of Connecticut, sitting by designation.

1

SANFORD I. WEISBURST (Peter E. Calamari and Rajat Rana, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *for Defendant-Appellee*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Continental Industries Group, Inc. ("CIG"), filed a complaint in the Southern District of New York against Defendant-Appellee Equate Petrochemical Company ("Equate") on September 27, 2012. The complaint alleged multiple causes of action, including breach of contract, breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel. Equate filed a motion to dismiss the complaint on February 22, 2013 on grounds of lack of personal jurisdiction, *forum non conveniens*, failure to join an indispensable party, and failure to state a claim. On September 9, 2013, the United States District Court for the Southern District of New York (Nathan, *J.*) granted Equate's motion to dismiss, concluding that CIG had not met its burden of establishing a prima facie case of personal jurisdiction over Equate. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal.

"We review de novo a district court's decision to dismiss a complaint for lack of personal jurisdiction." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). Because the district court relied on the pleadings and affidavits in dismissing the complaint rather than conducting a "full-blown evidentiary hearing," plaintiff "need only make a prima facie showing of personal jurisdiction over the defendant." *Id.* (internal quotation marks omitted). "In reviewing the dismissal, we construe the pleadings and affidavits in the light most favorable to plaintiff[], resolving

2

all doubts in [its] favor." *Id.* Nevertheless, CIG must make allegations establishing jurisdiction with some "factual specificity" and cannot establish jurisdiction through conclusory assertions alone. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). We review the district court's decision to decline to permit jurisdictional discovery for abuse of discretion. *See First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 175 (2d Cir. 1998).

We determine whether jurisdiction exists over a defendant by looking to "the law of the state where the court sits," unless "a state's assertion of jurisdiction contravenes a constitutional guarantee." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (quoting *Arrowsmith v. United Press Intern.*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). CIG argues that the district court had general jurisdiction over Equate pursuant to § 301 of New York's Civil Practice Law & Rules ("CPLR"). It also argues that the district court had specific jurisdiction under CPLR §§ 302(a)(1) and 302(a)(3). The district court correctly found that CIG did not plead facts that if proven true would set forth a basis for jurisdiction under any of these provisions.

Whatever the application of CPLR § 301 might be here, it is clear from the facts that general jurisdiction over Equate would be inconsistent with due process under the United States Constitution. CIG has not alleged that Equate is headquartered or incorporated in New York, nor has it alleged facts sufficient to show that it is otherwise "at home" in New York. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 761 n.19 (2014); *see also Gucci America v. Bank of China*, Nos. 11-3934-cv, 12-4557-cv, 2014 WL 4629049, at *10 (2d Cir. Sept. 17, 2014).

CIG also has not pled facts that if taken to be true would demonstrate that the district court has specific jurisdiction over Equate with respect to CIG's cause of action. Jurisdiction exists under

CPLR § 302(a)(1) where a defendant has "transact[ed] any business" in New York from which the cause of action has arisen. CPLR § 302(a)(1); *see also Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006) (same). In assessing whether a defendant has "transacted business," this Court looks to "the totality of the defendant's activities within the forum." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted). "New York courts define transacting business as purposeful activity— some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (internal quotation marks and brackets omitted). In assessing whether this has occurred, this Court has used a multi-factor test (none of which is dispositive) examining the defendant's contacts with New York. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). The factors are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Id.* (quoting *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). Evaluating the totality of Equate's contacts with New York through the prism of these factors, we agree with the district court that Equate did not purposefully avail itself of the privilege of conducting activities within New York.

The district court correctly found that the first factor "weighs only weakly toward finding personal jurisdiction over Equate." S.P.A. 11. While CIG alleges that Equate had an ongoing contractual relationship with CIG, a New York corporation, this factor does not weigh strongly towards a finding that Equate transacted business in New York because, even taking the facts

4

asserted by CIG to be true, the relationship between Equate and CIG concerned CIG's distribution of Equate's products in a foreign market rather than distribution of those products in New York.

As for the second factor, CIG has not alleged that any Equate employees ever visited New York to negotiate or execute the alleged agreement between Equate and CIG (the "Agreement"), nor has it alleged that any Equate employees came to New York for the purpose of meeting with CIG regarding its business relationship with Equate. CIG alleges, instead, that members of the Union Carbide Corporation ("Union Carbide") negotiated and finalized the contract in New York. But CIG has not pled sufficient facts to show that Union Carbide acted on behalf of Equate so that its contacts with New York can be attributed to the Defendant-Appellee.[1]

For CIG to demonstrate that Union Carbide acted on behalf of Equate, New York law requires CIG to show that Union Carbide "engaged in purposeful activities in th[e] State in relation to [the] transaction for the benefit of and with the knowledge and consent of" Equate, and that Equate "exercised some control over" Union Carbide. *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d. 40, 44 (N.Y. 1988). But the district court correctly found that, even if it were to infer Equate's knowledge of Union Carbide's activities, CIG has not pled facts that if taken to be true would provide any basis for an inference that Equate had "some control" over Union Carbide's activities. CIG also argues that Union Carbide's contacts with New York prior to its negotiation and Equate's ratification of the Agreement should be attributed to Equate under a theory akin to the doctrine under which a corporation may be held liable for the actions of a promoter. But assuming *arguendo* that as a matter of New York state law such contacts can be attributed to a newly-formed company in this

---

[1] Because we conclude that Union Carbide's actions cannot be attributed to Equate, we need not reach the question whether CIG properly raised the argument that Union Carbide's contacts with New York should be attributed to Equate before the district court.

5

manner, CIG's claims still fail because CIG has not alleged that the terms of the Agreement were reached prior to Equate's formation. *See Reif v. Williams Sportswear, Inc.*, 174 N.E.2d 492, 494-495 (N.Y. 1961) (setting forth the test by which a corporation may be liable on a contract negotiated by its promoters *prior to that corporation's incorporation*).

Neither the third nor fourth factor favors CIG nor changes our conclusion that the district court properly determined that it did not have jurisdiction over Equate under CPLR § 302(a)(1). As to the third factor, CIG alleges that the Agreement was oral. The Agreement is not alleged to contain a choice-of-law clause and the only documents with a choice of law provision exchanged between Equate and CIG were Equate's purchase orders, which state that they are to be governed by English law. The fourth factor looks at "whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Sunward Elecs., Inc.*, 362 F.3d at 22. Equate was not subject to any supervision in the forum state. The one action it allegedly took that falls under this prong is sending invoices to CIG in New York, but courts in this jurisdiction have not found such limited contacts to be sufficient for jurisdiction where they are incident to services performed elsewhere. *See Nader v. Getschaw*, 2000 WL 1471553, at *4 (S.D.N.Y. 2000); *Mayes v. Leipziger*, 674 F. 2d 178, 184-85 (2d Cir. 1982). Here, the invoices sent by Equate were incident to Equate's shipment of goods from Kuwait to Turkey. Just like the relevant parties in *Nader* and *Mayes*, Equate never entered the forum state and it performed the relevant services outside of the jurisdiction. Equate's very limited contacts under this fourth prong are thus not sufficient to support jurisdiction.

The district court also correctly declined to find specific jurisdiction over Equate under CPLR § 302(a)(3). CPLR § 302(a)(3) provides jurisdiction where a defendant "commits a tortious act

without the state causing injury to person or property within the state" and that defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The critical question for assessing where the injury took place for purposes of CPLR § 302(a)(3) is "where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels*, 171 F.3d at 792. The district court correctly determined that "the situs of the injury in this case was Turkey" and not New York because "the first effect of the tort was for CIG's customers [in Turkey] to stop purchasing products from it." S.P.A. 18, 19; *see Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 435 (2d Cir. 1971) (finding that the injury did not occur in New York where a foreign corporation induced a New York corporation to lose out-of-state customers, even though the actions ultimately had foreseeable consequences in New York). Since the situs of the injury was Turkey, the district court did not have jurisdiction under CPLR § 302(a)(3).

Because we agree with the district court that the plaintiff failed to establish a prima facie case for jurisdiction, we find that the court did not abuse its discretion in declining to permit jurisdictional discovery. *Best Van Lines*, 490 F.3d at 255 ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."). Because we find that the district court properly dismissed CIG's complaint for lack of jurisdiction, we need not address the alternative grounds for dismissal advocated by Equate. We have reviewed Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit